ORIGINAL FILED

06 OCT 13 PM 3:33

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JSW

1 | LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2 | WILLIAM S. LERACH (68581)
    DARREN J. ROBBINS (168593)
3 | TRAVIS E. DOWNS III (148274)
    655 West Broadway, Suite 1900
4 | San Diego, CA 92101
    Telephone: 619/231-1058
5 | 619/231-7423 (fax)
    billl@lerachlaw.com
6 | darrenr@lerachlaw.com
    travisd@lerachlaw.com
7 |   – and –
    SHAWN A. WILLIAMS (213113)
8 | 100 Pine Street, Suite 2600
    San Francisco, CA 94111
9 | Telephone: 415/288-4545
    415/288-4534 (fax)
10 | shawnw@lerachlaw.com

11 | Attorneys for Plaintiff

C 06 6421

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

14 | JOHN DROSKOKSKI, Derivatively on Behalf )
    of EQUINIX, INC.,                       )
15 |                                         )
                        Plaintiff,           )
16 |                                         )
         vs.                                 )
17 |                                         )
    PETER F. VAN CAMP, KEITH D. TAYLOR, )
18 | SUSHIL KAPOOR, MARJORIE S.             )
    BACKAUS, RENÉE F. LANAM, PETER T. )
19 | FERRIS, BRANDI GALVIN MORANDI,         )
    PHILIP J. KOEN, SCOTT KRIENS, LOUIS J. )
20 | LAVIGNE, JR., STEVEN T. CLONTZ,        )
    STEVEN P. ENG and GARY HROMADKO, )
21 |                                         )
                        Defendants,          )
22 |                                         )
         – and –                             )
23 |                                         )
    EQUINIX, INC., a Delaware corporation,  )
24 |                                         )
                  Nominal Defendant.         )
25 | _____)

**VIA FAX**

No.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS AND
STATE LAW CLAIMS FOR BREACH OF
FIDUCIARY DUTY, ABUSE OF
CONTROL, CONSTRUCTIVE FRAUD,
CORPORATE WASTE, UNJUST
ENRICHMENT, GROSS
MISMANAGEMENT, ACTION FOR
ACCOUNTING AND VIOLATION OF
CALIFORNIA CORPORATIONS CODE

DEMAND FOR JURY TRIAL

COPY

**NATURE OF THE ACTION**

1.    This is a shareholder derivative action brought by a shareholder of Equinix, Inc. ("Equinix" or the "Company") on behalf of the Company against its entire Board of Directors and certain current officers and former top officers and/or directors (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Equinix insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Equinix insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 2001.

2.    Between 2001 and 2006, Defendants also caused Equinix to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Equinix carried with them an exercise price that was not less than the fair market value of Equinix stock on the date of grant and issuance.

3.    In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be backdated to dates when the Company's shares were trading at or near the lowest price for that relevant period. By June 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, contributing to their ability to sell over $55.7 million worth of Equinix stock.

4.    Equinix's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Equinix to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Equinix executives; and (iii) subjected Equinix to potential liability from regulators, including the SEC and the IRS.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 1 -

5.     Defendants' gross mismanagement and malfeasance over the past decade has exposed Equinix and its senior executives to criminal and civil liability for issuing false and misleading financial statements.  Specifically, Defendants caused or allowed Equinix to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public disclosures presented an inflated view of Equinix's earnings and earnings per share.

6.     Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on Equinix.  The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their misdeeds.  Defendants' breaches of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to the plans.  The Company has now been mentioned as one of several companies likely to have manipulated options.  Meanwhile, certain of the Defendants, who received under-priced stock options and/or knew material non-public information regarding Equinix's internal control problems, abused their fiduciary relationship with the Company by selling over $55.7 million worth of their personally held shares at artificially inflated prices during the relevant period.  This action seeks recovery for Equinix against these faithless fiduciaries, as Equinix's Board of Directors, as currently composed, is simply unable or unwilling to do so.

**INTRADISTRICT ASSIGNMENT**

7.     A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of San Mateo, and as such this action is properly assigned to the San Francisco or Oakland division of this Court.

**JURISDICTION AND VENUE**

8.     The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control,

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          -2-

1  constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection

2  with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly,

3  used the means and instrumentalities of interstate commerce, the United States mail and the facilities

4  of a national securities market.

5        9.     This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

6  U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the

7  state law claims asserted herein pursuant to 28 U.S.C. §1367.

8        10.    This action is not a collusive one to confer jurisdiction on a court of the United States

9  which it would not otherwise have.

10        11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa,

11  as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and

12  dissemination of materially false and misleading information, occurred in substantial part in this

13  District. Equinix is located in and conducts its business in this District. Further, Defendants conduct

14  business in this District, and certain of the Defendants are citizens of California and reside in this

15  District.

16                                        **PARTIES**

17        12.    Plaintiff John Droskokski is, and at all relevant times was, a shareholder of Equinix.

18        13.    Nominal party Equinix is a Delaware corporation with its principal executive offices

19  located at 301 Velocity Way, Fifth Floor, Foster City, California. Equinix provides network neutral

20  colocation, interconnection and information technology infrastructure services to enterprises, content

21  companies, systems integrators and network providers.

22        14.    Defendant Peter F. Van Camp ("Van Camp") has served as Chief Executive Officer

23  ("CEO") and a director of Equinix since 2000. Van Camp became President of Equinix in March

24  2006. Van Camp was re-elected to the position of Chairman of the Board of Equinix in December

25  2005, having previously served in that position from June 2001 to December 2002. Van Camp

26  actively participated in the management of Equinix's daily business affairs and finances. He also

27  actively participated in the preparation, review and approval of Equinix's publicly reported financial

28  results and financial statements for FY 2001-2005, as well as the corresponding reports on SEC

1   Form 10-K and press releases.  Based on his knowledge of material non-public information

2   regarding the Company, defendant Van Camp violated Cal. Corp. Code §§25402 and 25502.5 by

3   selling 329,976 Equinix shares for insider trading proceeds of more than $12.8 million.

4        15.    Defendant Keith D. Taylor ("Taylor") has served as Chief Financial Officer ("CFO")

5   of Equinix since September 2005.  Previously, Taylor served as Vice President, Finance and Chief

6   Accounting Officer of Equinix from February 2001 to September 2005.  Taylor served as Director of

7   Finance and Administration of Equinix from February 1999 to February 2001.  At all relevant times,

8   Taylor actively participated in the management of Equinix's daily business affairs and finances.  He

9   also actively participated in the preparation, review and approval of Equinix's publicly reported

10  financial results and financial statements for FY 2001-2005, as well as the corresponding reports on

11  SEC Form 10-K and press releases.  Based on his knowledge of material non-public information

12  regarding the Company, defendant Taylor violated Cal. Corp. Code §§25402 and 25502.5 by selling

13  114,544 Equinix shares for insider trading proceeds of more than $4.5 million.

14       16.    Defendant Sushil Kapoor ("Kapoor") has served as Vice President – Operations of

15  Equinix since March 2001.  At all relevant times, Kapoor actively participated in the management of

16  Equinix's daily business affairs and finances.  He also actively participated in the preparation,

17  review and approval of Equinix's publicly reported financial results and financial statements for FY

18  2001-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  Based on his

19  knowledge of material non-public information regarding the Company, defendant Kapoor violated

20  Cal. Corp. Code §§25402 and 25502.5 by selling 64,181 Equinix shares for insider trading proceeds

21  of more than $3.09 million.

22       17.    Defendant Marjorie S. Backaus ("Backaus") has served as Chief Business Officer of

23  Equinix since June 2003.  Previously, Backaus served as Chief Marketing Officer of Equinix from

24  November 1999 until February 2000 and as Vice President of Marketing Strategy from February

25  2000 to May 2003.  At all relevant times, Backaus actively participated in the management of

26  Equinix's daily business affairs and finances.  She also actively participated in the preparation,

27  review and approval of Equinix's publicly reported financial results and financial statements for FY

28  2001-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on

1  her knowledge of material non-public information regarding the Company, defendant Backaus

2  violated Cal. Corp. Code §§25402 and 25502.5 by selling 129,239 Equinix shares for insider trading

3  proceeds of more than $4.7 million.

4          18.      Defendant Renée F. Lanam ("Lanam") has served as Chief Development Officer of

5  Equinix since September 2005 and secretary since February 2002.  Previously, Lanam served as

6  CFO of Equinix from February 2002 to September 2005.  Lanam also served as Vice President of

7  Corporate Finance of Equinix from November 2001 to February 2002.  At all relevant times, Lanam

8  actively participated in the management of Equinix's daily business affairs and finances.  During the

9  relevant period, Lanam also actively participated in the preparation, review and approval of

10  Equinix's publicly reported financial results and financial statements for FY 2001-2005, as well as

11  the corresponding reports on SEC Form 10-K and press releases.  Based on her knowledge of

12  material non-public information regarding the Company, defendant Lanam violated Cal. Corp. Code

13  §§25402 and 25502.5 by selling 194,518 Equinix shares for insider trading proceeds of more than

14  $7.5 million during the relevant period.

15          19.      Defendant Peter T. Ferris ("Ferris") has served as Vice President Sales of Equinix

16  since July 1999.  At all relevant times, Lanam actively participated in the management of Equinix's

17  daily business affairs and finances.  During the relevant period, Ferris also actively participated in

18  the preparation, review and approval of Equinix's publicly reported financial results and financial

19  statements for FY 2001-2005, as well as the corresponding reports on SEC Form 10-K and press

20  releases.  Based on his knowledge of material non-public information regarding the Company,

21  defendant Ferris violated Cal. Corp. Code §§25402 and 25502.5 by selling 124,068 Equinix shares

22  for insider trading proceeds of more than $5.6 million during the relevant period.

23          20.      Defendant Brandi Galvin Morandi ("Galvin Morandi") has served as General Counsel

24  and Assistant Secretary of Equinix since January 2003.  At all relevant times, Galvin Morandi

25  actively participated in the management of Equinix's daily business affairs and finances.  During the

26  relevant period, Galvin Morandi also actively participated in the preparation, review and approval of

27  Equinix's publicly reported financial results and financial statements for FY 2003-2005, as well as

28  the corresponding reports on SEC Form 10-K and press releases.  Based on her knowledge of

1  material non-public information regarding the Company, defendant Galvin Morandi violated Cal.

2  Corp. Code §§25402 and 25502.5 by selling 86,146 Equinix shares for insider trading proceeds of

3  more than $2.6 million during the relevant period.

4       21.     Defendant Philip J. Koen ("Koen") was President and Chief Operating Officer

5  ("COO") of Equinix from 2001 until his resignation in November 2005. Koen was also CFO of

6  Equinix from 1999-2001. At all relevant times, Koen actively participated in the management of

7  Equinix's daily business affairs and finances. During the relevant period, Koen also actively

8  participated in the preparation, review and approval of Equinix's publicly reported financial results

9  and financial statements for FY 2001-2005, as well as the corresponding reports on SEC Form 10-K

10  and press releases. Based on his knowledge of material non-public information regarding the

11  Company, defendant Koen violated Cal. Corp. Code §§25402 and 25502.5 by selling 307,528

12  Equinix shares for insider trading proceeds of more than $13.3 million during the relevant period.

13       22.     Defendant Scott Kriens ("Kriens") has been a director of Equinix since July 2000.

14  During the relevant period, Kriens actively participated in the preparation, review and approval of

15  Equinix's publicly reported financial results and financial statements for FY 2001-2005, as well as

16  the corresponding reports on SEC Form 10-K and press releases. At all relevant times, Kriens

17  served on the Compensation and Nominating Committees of the Equinix Board. As a member of the

18  Nominating Committee, defendant Kriens caused or allowed the dissemination of the improper

19  public statements described herein. The Compensation Committee approved the award of stock

20  options to Equinix employees and officers between FY 2001-2005 and actively participated in the

21  management of Equinix's daily business affairs and finances. The Nominating Committee is

22  responsible for identifying and considering qualified candidates for appointment and nomination to

23  the Equinix Board and recommending corporate governance principles, codes of conduct and

24  compliance mechanisms, and evaluation of the Board for the Company.

25       23.     Defendant Louis J. Lavigne, Jr. ("Lavigne") has been a director of Equinix since

26  2005. As a member of the Audit Committee, defendant Lavigne caused or allowed the

27  dissemination of the improper public statements described herein.

28

24.     Defendant Steven P. Eng ("Eng") has been a director of Equinix since December 2002. During the relevant period, Eng actively participated in the preparation, review and approval of Equinix's publicly reported financial results and financial statements for FY 2002-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  As a member of the Audit Committee, defendant Eng caused or allowed the dissemination of the improper public statements described herein.  At all relevant times, Eng served on the Compensation and Nominating Committees of the Equinix Board.  The Compensation Committee approved the award of stock options to Equinix employees and officers between FY 2002-2005 and actively participated in the management of Equinix's daily business affairs and finances.  The Nominating Committee is responsible for identifying and considering qualified candidates for appointment and nomination to the Equinix Board and recommending corporate governance principles, codes of conduct and compliance mechanisms, and evaluation of the Board for the Company.

25.     Defendant Steven T. Clontz ("Clontz") has been a director of Equinix since April 2005.

26.     Defendant Gary Hromadko ("Hromadko") has been a director of Equinix since June 2003. During the relevant period, Hromadko actively participated in the preparation, review and approval of Equinix's publicly reported financial results and financial statements for FY 2003-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  As a member of the Audit and Nominating Committees, defendant Hromadko caused or allowed the dissemination of the improper public statements described herein.  Based on his knowledge of material non-public information regarding the Company, defendant Hromadko violated Cal. Corp. Code §§25402 and 25502.5 by selling 42,750 Equinix shares for insider trading proceeds of $1.38 million during the relevant period.

27.     The defendants identified in ¶¶14 and 22-26 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶14-21 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶14-21 and 26 are referred to herein as the "Insider Selling Defendants."

**DEFENDANTS' DUTIES**

28.     Each officer and director of Equinix named herein owed the Company and Equinix shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Equinix's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Equinix. Further, the misconduct of Equinix's officers has been ratified by Equinix's Board, which has failed to take any legal action on behalf of the Company against them.

29.     By reason of their positions as officers, directors and fiduciaries of Equinix and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Equinix and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Equinix in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Equinix and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Equinix to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

30.     Because of their positions of control and authority as directors or officers of Equinix, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause Equinix to disseminate false Proxy Statements for 2001-2005, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Equinix, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Equinix shareholders and the financial markets but failed to do so.

31.     Between 2001 and 2005, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was *not less than* the fair market value of Equinix stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date.  However, Defendants concealed until 2006 that the stock option grants were repeatedly and consciously *backdated* to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period.  Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to Defendants between 2001 and 2002 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

32.     To discharge their duties, the directors of Equinix were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Equinix.  By virtue of such duties, the officers and directors of Equinix were required, among other things, to:

(a)     manage, conduct, supervise and direct the business affairs of Equinix in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Equinix);

(b)     neither engage in self-dealing nor knowingly permit any officer, director or employee of Equinix to engage in self-dealing;

(c)     neither violate nor knowingly permit any officer, director or employee of Equinix to violate applicable laws, rules and regulations;

(d)     remain informed as to the status of Equinix's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices

1  and make such disclosures as are necessary to comply with the U.S. federal securities laws and their

2  duty of candor to the Company's shareholders;

3         (e)     prudently protect the Company's assets, including taking all necessary steps to

4  recover corporate assets (cash, stock options) improperly paid to Company executives and directors

5  together with the related costs (professional fees) proximately caused by the illegal conduct

6  described herein;

7         (f)     establish and maintain systematic and accurate records and reports of the

8  business and affairs of Equinix and procedures for the reporting of the business and affairs to the

9  Board of Directors and to periodically investigate, or cause independent investigation to be made of,

10  said reports and records;

11         (g)     maintain and implement an adequate, functioning system of internal legal,

12  financial and accounting controls, such that Equinix's financial statements – including its expenses,

13  accounting for stock option grants and other financial information – would be accurate and the

14  actions of its directors would be in accordance with all applicable laws;

15         (h)     exercise control and supervision over the public statements to the securities

16  markets and trading in Equinix stock by the officers and employees of Equinix; and

17         (i)     supervise the preparation and filing of any financial reports or other

18  information required by law from Equinix and to examine and evaluate any reports of examinations,

19  audits or other financial information concerning the financial affairs of Equinix and to make full and

20  accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set

21  forth above.

22       33.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to

23  the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

24  due care and diligence in the management and administration of the affairs of the Company, as well

25  as in the use and preservation of its property and assets. The conduct of the Defendants complained

26  of herein involves a knowing and culpable violation of their obligations as directors and/or officers

27  of Equinix, the absence of good faith on their part, and a reckless disregard for their duties to the

28  Company and its shareholders, which Defendants were aware or should have been aware posed a

1  risk of serious injury to the Company. The conduct of the Defendants who were also officers and/or
2  directors of the Company during the relevant period has been ratified by the Director Defendants
3  who comprised Equinix's entire Board during the relevant period.

4      34.    Defendants breached their duties of loyalty and good faith by allowing or by
5  themselves causing the Company to misrepresent its financial results and prospects, as detailed
6  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. In addition,
7  as a result of Defendants' illegal actions and course of conduct during the relevant period, the
8  Company is now the subject of an SEC inquiry. As a result, Equinix has expended and will continue
9  to expend significant sums of money. Such expenditures include, but are not limited to:

10          (a)    improvidently paid executive compensation;

11          (b)    increased capital costs as a result of the loss of market capitalization and the
12  Company's damaged reputation in the investment community;

13          (c)    costs incurred to carry out internal investigations, including legal fees paid to
14  outside counsel; and

15          (d)    incurring possible IRS penalties for improperly reporting compensation.

16      35.    These actions have irreparably damaged Equinix's corporate image and goodwill.
17  For at least the foreseeable future, Equinix will suffer from what is known as the "liar's discount," a
18  term applied to the stocks of companies who have been implicated in illegal behavior and have
19  misled the investing public, such that Equinix's ability to raise equity capital or debt on favorable
20  terms in the future is now impaired.

21              **AIDING AND ABETTING AND CONCERTED ACTION**

22      36.    In committing the wrongful acts alleged herein, Defendants have pursued or joined in
23  the pursuit of a common course of conduct, and have acted in concert with one another in
24  furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as
25  giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in
26  breach of their respective duties.

27      37.    At relevant times, Defendants collectively and individually initiated a course of
28  conduct which was designed to and did: (i) conceal the fact that the Company was over-paying its

1   directors, officers and employees and improperly misrepresenting its financial results, in order to

2   allow Defendants to artificially inflate the price of the Company's shares; (ii) maintain Defendants'

3   executive and directorial positions at Equinix and the profits, power and prestige which Defendants

4   enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of

5   Equinix, regarding Defendants' management of Equinix's operations, the Company's financial

6   health and stability, and future business prospects, which had been misrepresented by Defendants

7   throughout the relevant period; and (iv) allow several of the Company's officers and directors to sell

8   millions of dollars worth of Company stock at inflated prices.  In furtherance of this course of

9   conduct, Defendants collectively and individually took the actions set forth herein.

10      38.      Defendants engaged in a common course of conduct commencing by at least 2001

11   and continuing thereafter. During this time, Defendants caused the Company to conceal the true fact

12   that Equinix was over-compensating its directors, officers and employees and misrepresenting its

13   financial results. In addition, Defendants also made other specific, false statements about Equinix's

14   financial performance and future business prospects, as alleged herein.

15      39.      The purpose and effect of Defendants' common enterprise and/or common course of

16   conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary

17   duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to

18   conceal adverse information concerning the Company's operations, financial condition, and future

19   business prospects; and to artificially inflate the price of Equinix common stock so they could: (i)

20   dispose of millions of dollars of their own stock, and (ii) protect and enhance their executive and

21   directorial positions and the substantial compensation and prestige they obtained as a result thereof.

22      40.      Defendants accomplished their common enterprise and/or common course of conduct

23   by causing the Company to purposefully, recklessly or negligently grant under-priced stock options

24   and to misrepresent its financial results.  Because the actions described herein occurred under the

25   authority of the Board of Directors, each of the Defendants was a direct, necessary, and substantial

26   participant in the common enterprise and/or common course of conduct complained of herein.

27      41.      Each of the Defendants aided and abetted and rendered substantial  assistance in the

28   wrongs complained of herein.  In taking such actions to substantially assist the commission of the

1  wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary

2  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or

3  her overall contribution to and furtherance of the wrongdoing.

4  <center>**BACKGROUND**</center>

5    42.    Equinix provides network neutral colocation, interconnection and information

6  technology infrastructure services to enterprises, content companies, systems integrators and

7  network providers. Through its Internet Business Exchange hubs in 11 markets in the United States

8  and Asia-Pacific, customers can directly interconnect with each other for traffic exchange

9  requirements.

10   43.    Throughout the relevant period, Defendants caused Equinix to grant them millions of

11  stock options permitting them to buy Equinix's stock for pennies on the dollar which they could in

12  turn sell as the Company's stock price increased.  A stock option gives the holder the right to buy a

13  stock at a certain price in the future.  Typically, companies set that price at the same time their

14  directors approve an option grant, with an exercise price – also known as the "strike price" – usually

15  set at the closing price of the stock that day, the closing price of the night before or by computing an

16  average of the high and low prices on the day of the vote.

17   44.    However, many of the millions of options granted to Equinix's executives had a

18  hidden, valuable component:  they were misdated, often making them even more significantly

19  valuable.  The misdated stock option grants fell largely into three categories: (i) "look back" grants,

20  in which the date of the grant was picked retroactively (e.g., a decision in February to pick a January

21  date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized –

22  and sometimes changed – at a later date (e.g., a decision on January 1 to issue a grant on January 15,

23  but there is a period after January 15 in which the grantor waits to see if a more advantageous price

24  occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

25  complete the option grant process by the date of the grant (e.g., where there is a decision to issue a

26  grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

27  and although the work is not complete on those grants as of the stated grant date, that date is

28  nonetheless used).  Certain of Equinix's grants are described below.

1

**STOCK OPTION GRANTS**

2 **2001 Option Grants**

3    45.    Defendants dated some of Equinix's 2001 option grants on or about January 9, 2001,

4 at $3.72 per share (adjusted for stock split) – near the low of the month. The stock traded as high as

5 $7.00 per share within two weeks of the "grant date." Defendants Koen, Backaus and Ferris

6 received 260,000, 125,000 and 125,000 options, respectively, at this price.

7    46.    Defendants dated several of Equinix's 2001 option grants as of April 9, 2001, at $0.92

8 per share (adjusted for stock split) – near the low of the month. The stock traded as high as $1.63

9 per share in April 2001. Defendant Van Camp received 1.2 million options at this exercise price and

10 defendant Koen received 1 million options at this exercise price. Defendants dated other of

11 Equinix's 2001 option grants on or about September 26, 2001, at $0.38 per share (adjusted for stock

12 split) – near the low of not only the month of September, but all of 2006. Defendants Van Camp,

13 Koen, Backaus and Ferris received 1 million, 500,000, 350,000 and 350,000 options, respectively, at

14 this exercise price.

15    47.    Below are several of Equinix's grants which occurred right before significant stock

16 price increases (unadjusted for stock splits):

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      48.     Complicating matters and magnifying the harm to Equinix, during the relevant period,

17   Equinix's internal controls and accounting controls with respect to option grants and exercises, and

18   its financial reporting, were grossly inadequate.  The weaknesses allowed dates of both grants and

19   exercises to be manipulated and the Company's executive compensation expenses to be materially

20   understated. They also allowed grant dates to be changed to provide executives with more favorably

21   priced options, in effect augmenting their compensation, with no benefit running to the Company.

22      49.     Specifically, in many instances the reported dates Equinix stock options were granted

23   differed from the dates on which the options appear to have been actually granted.  The practice

24   applied to the overwhelming majority of stock option grants made during the relevant period, which

25   allowed executives and employees to make more money on their options because it set a lower

26   "strike price" at which the options could be exercised, allowing employees to take larger profits

27   when the stock price later rose.  In almost every case of misdating, the price of Equinix shares on the

28   reported option-grant date was lower than the share price on the actual day the options were issued.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 16 -

50.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Equinix a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company.   In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Equinix faced because of its deficient internal controls.   Furthermore, defendants Lavigne, Eng and Hromadko, as members of the Audit Committee during the relevant period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. The Officer Defendants had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, the Director Defendants had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Equinix to the investing public and the Company's shareholders during the relevant period.

51.     Specifically, since 2001, Defendants caused Equinix to report false and misleading financial results which materially understated its compensation expenses and thus overstated its earnings as follows:

| Fiscal Year | Reported Earnings (loss) (in millions) | Reported Diluted EPS (loss per share) |
|---|---|---|
| 2001 | $(188.41) | $(1.78) |
| 2002 | $(21.62) | $(41.30) |
| 2003 | $(84.17) | $(8.76) |
| 2004 | $(68.63) | $(1.96) |
| 2005 | $(42.61) | $(.01) |

52.     Meanwhile, Defendants were causing the Company to grant them millions of stock options, many of which were misdated.  In fact, non-employee members of the Equinix's Board of

1 Directors received most of their compensation for serving as Board members in the form of stock

2 options.  Under the 2001 Stock Incentive Plan, non-employee directors automatically received an

3 initial stock option grant of Equinix shares upon their election to the Board and thereafter an

4 additional annual grant of options to purchase shares of the Company's common stock. The

5 Company's executive directors and officers also received a significant number of stock options as

6 compensation during the relevant period.  In total, during the relevant period Defendants caused the

7 Company to grant them millions of stock options, many of which, the evidence will show, were

8 misdated.

9       53.     Moreover, throughout the relevant period certain Defendants exercised many of these

10 stock options contributing to their ability to sell over $55.7 million worth of Equinix stock – stock

11 they obtained often by cashing in under-priced stock options:

| INSIDER | DATES | SHARES[1] | PROCEEDS |
|---|---|---|---|
| VAN CAMP | 8/1/03-6/15/06 | 329,976 | $12,836,848 |
| TAYLOR | 8/1/03-6/1/06 | 114,544 | $4,521,854 |
| LANAM | 8/1/03-6/7/06 | 194,518 | $7,521,737 |
| BACKAUS | 6/4/03-6/1/06 | 129,239 | $4,783,214 |
| FERRIS | 8/1/03-3/13/06 | 124,068 | $5,608,612 |
| GALVIN MORANDI | 6/5/03-9/1/05 | 86,146 | $2,681,994 |
| HROMADKO | 3/8/04-3/9/04 | 42,750 | $1,380,438 |
| KAPOOR | 3/2/05-5/9/06 | 64,181 | $3,097,272 |
| KOEN | 3/5/04-3/2/06 | 307,528 | $13,331,174 |
| TOTAL | | 1,392,950 | $55,763,143 |

19       54.     Then, on June 12, 2006, the Company announced an SEC inquiry into Equinix's

20 option practices.  The June 12, 2006 release stated in part:

> Equinix, Inc. today announced the Company has initiated an independent review by
> the audit committee of the Board of Directors to review the Company's historical
> stock option practices and related accounting. The company requested the internal
> review following the release of a third party report regarding the timing and pricing
> of stock option grants at a large number of public companies. Independent counsel
> and advisors are assisting the audit committee with this review
>
>     The company also announced that subsequent to the initiation of this review,
> it received an informal inquiry from the Securities and Exchange Commission
> relating to stock option grants and practices. The letter from the SEC states that the

---

[1] Shares are reverse-split adjusted.

1  inquiry should not be construed as an indication by the SEC or its staff that any
   violation of law has occurred, or as an adverse reflection upon any person, entity or
2  security. The company said it intends to cooperate fully with the SEC.

3      55.    In effect, during the relevant period, the Defendants caused Equinix's shares to trade

4  at artificially inflated levels by issuing a series of materially false and misleading statements

5  regarding the Company's financial statements, business and prospects. Specifically, Defendants

6  caused or allowed Equinix to issue statements that failed to disclose or misstated the following: (i)

7  that the Company had problems with its internal controls that prevented it from issuing accurate

8  financial reports and projections; (ii) that because of improperly recorded stock-based compensation

9  expenses the Company's financial results violated GAAP; and (iii) that the Company's public

10  disclosures presented an inflated view of Equinix's earnings and earnings per share.

11              **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

12      56.    Plaintiff brings this action derivatively in the right and for the benefit of Equinix to

13  redress injuries suffered and to be suffered by Equinix as a direct result of Defendants' violations of

14  state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross

15  mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof,

16  by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would

17  not otherwise have.

18      57.    Plaintiff will adequately and fairly represent the interests of Equinix and its

19  shareholders in enforcing and prosecuting its rights.

20      58.    Plaintiff is an owner of Equinix stock and was an owner of Equinix stock during

21  times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

22      59.    Based upon the facts set forth throughout this Complaint, a pre-filing demand upon

23  the Equinix Board of Directors to institute this action against the officers and members of the

24  Equinix Board of Directors is excused as futile. A pre-filing demand would be a useless and futile

25  act because:

26          (a)    The members of Equinix's Board have demonstrated their unwillingness

27  and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or

28  their fellow directors and allies in the top ranks of the corporation for the violations of law

1  complained of herein.  These are people they have developed professional relationships with, who
2  are their friends and with whom they have entangling financial alliances, interests and dependencies,
3  and therefore, they are not able to and will not vigorously prosecute any such action.

4           (b)     The Equinix Board of Directors and senior management participated in,
5  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to
6  conceal or disguise those wrongs from Equinix's stockholders or recklessly and/or consciously
7  negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.
8  As a result of their access to and review of internal corporate documents, conversations and
9  connections with other corporate officers, employees, and directors, and attendance at management
10 and/or Board meetings, each of the Defendants knew the adverse non-public information regarding
11 the improper stock option grants and financial reporting.  Pursuant to their specific duties as Board
12 members, Defendants are charged with the management of the Company and to conduct its business
13 affairs.  Defendants breached the fiduciary duties that they owed to Equinix in that they failed to
14 prevent and correct the improper stock option granting and financial reporting.  Certain directors are
15 also dominated and controlled by other Defendants and cannot act independently of them.  Thus, the
16 Equinix Board cannot exercise independent objective judgment in deciding whether to bring this
17 action or whether to vigorously prosecute this action because each of its members participated
18 personally in the wrongdoing or are dependent upon other Defendants who did.

19          (c)     The acts complained of constitute violations of the fiduciary duties owed by
20 Equinix's officers and directors and these acts are incapable of ratification.

21          (d)     The members of Equinix's Board have benefited, and will continue to benefit,
22 from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of
23 control and the perquisites derived thereof, and are incapable of exercising independent objective
24 judgment in deciding whether to bring this action.

25          (e)     Any suit by the current directors of Equinix to remedy these wrongs would
26 likely further expose the liability of Defendants under the federal securities laws, which could result
27 in civil and/or criminal actions being filed against one or more of the Defendants, thus, they are
28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS         - 20 -

1  hopelessly conflicted in making any supposedly independent determination on whether to sue
2  themselves.

3          (f)     Equinix has been and will continue to be exposed to significant losses due to
4  the wrongdoing complained of herein, yet Equinix's Board has not filed any lawsuits against
5  Defendants or others who were responsible for that wrongful conduct to attempt to recover for
6  Equinix any part of the damages Equinix suffered and will suffer thereby.

7          (g)     In order to properly prosecute this lawsuit, Equinix's directors would have to
8  sue themselves and the other Defendants, requiring them to expose themselves and their comrades to
9  millions of dollars in civil liability and/or sanctions. This they will not do.

10         (h)     Equinix's current and past officers and directors are protected against personal
11  liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this
12  Complaint by directors' and officers' liability insurance which they caused the Company to purchase
13  for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Equinix.
14  However, due to certain changes in the language of directors' and officers' liability insurance
15  policies in the past few years, the directors' and officers' liability insurance policies covering the
16  Defendants in this case contain provisions which eliminate coverage for any action brought directly
17  by Equinix against these Defendants, known as, *inter alia,* the "insured versus insured exclusion."
18  As a result, if these directors were to sue themselves or certain of the officers of Equinix, there
19  would be no directors' and officers' insurance protection and thus, this is a further reason why they
20  will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is
21  brought, such insurance coverage exists and will provide a basis for the Company to effectuate a
22  recovery.

23         (i)     To bring this action for breaching their fiduciary duties, the members of the
24  Equinix Board would have been required to sue themselves and/or their fellow directors and allies in
25  the top ranks of the Company, who are their personal friends and with whom they have entangling
26  financial alliances, interests and dependencies, which they would not do.

27      60.     Plaintiff has not made any demand on shareholders of Equinix to institute this action
28  since such demand would be a futile and useless act for the following reasons:

(a)    Equinix is a publicly traded company with approximately 28 million shares outstanding, and thousands of shareholders;

(b)    Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)    Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON EQUINIX'S FINANCIAL STATEMENTS

**The 2001 Form 10-K**

61.    On or about March 25, 2002, the Company filed its 2001 Form 10-K with the SEC. The 2001 Form 10-K was simultaneously distributed to shareholders and the public. The 2001 Form 10-K included Equinix's 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Equinix's compensation expense was understated and its net earnings were overstated.

**The 2002 Form 10-K**

62.    On or about March 27, 2003, the Company filed its 2002 Form 10-K with the SEC. The 2002 Form 10-K was simultaneously distributed to shareholders and the public. The 2002 Form 10-K included Equinix's 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Equinix's compensation expense was understated and its net earnings were overstated.

**The 2003 Form 10-K**

63.    On or about March 5, 2004, the Company filed its 2003 Form 10-K with the SEC. The 2003 Form 10-K was simultaneously distributed to shareholders and the public. The 2003 Form 10-K included Equinix's 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Equinix's compensation expense was understated and its net earnings were overstated.

**The 2004 Form 10-K**

64.    On or about March 10, 2005, the Company filed its 2004 Form 10-K with the SEC. The 2004 Form 10-K was simultaneously distributed to shareholders and the public. The 2004 Form 10-K included Equinix's 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Equinix's compensation expense was understated and its net earnings were overstated.

**The 2005 Form 10-K**

65.    On or about March 16, 2006, the Company filed its 2005 Form 10-K with the SEC. The 2005 Form 10-K was simultaneously distributed to shareholders and the public. The 2005 Form 10-K included Equinix's 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Equinix's compensation expense was understated and its net earnings were overstated.

66.    The materially false and misleading 2001-2005 Form 10-Ks described above were reviewed, prepared and/or endorsed by the Director Defendants. The 2001-2004 Form 10-Ks were signed by defendant Van Camp as CEO. The 2001-2005 Form 10-Ks were signed by defendant Lanam as CFO. The 2004-2005 Form 10-Ks were signed by defendant Taylor as CFO or as Vice President of Finance.

<div align="center"><strong>DEFENDANTS' SCHEME BEGINS TO UNRAVEL</strong></div>

67.    The 2001-2005 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between 2001 and 2005. In fact, it was not until the Company announced an SEC inquiry on June 12, 2006, that shareholders learned that the Proxy Statements which they had relied upon for nearly a decade were false and misleading. The June 12, 2006 release stated in part:

> Equinix, Inc. today announced the Company has initiated an independent review by the audit committee of the Board of Directors to review the Company's historical stock option practices and related accounting. The company requested the internal review following the release of a third party report regarding the timing and pricing of stock option grants at a large number of public companies. Independent counsel and advisors are assisting the audit committee with this review
>
> The company also announced that subsequent to the initiation of this review, it received an informal inquiry from the Securities and Exchange Commission

relating to stock option grants and practices. The letter from the SEC states that the inquiry should not be construed as an indication by the SEC or its staff that any violation of law has occurred, or as an adverse reflection upon any person, entity or security. The company said it intends to cooperate fully with the SEC.

68.     Defendants have been unjustly enriched at the expense of Equinix, which has received and will receive less money from the Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

69.     Each dollar diverted to Defendants via the option backdating scheme has come at the expense of the Company. For example, if Van Camp's 1.2 million options granted on April 9, 2001 had not been manipulated, but rather had a strike price of $1.50, which was the average for April 2001, instead of the $0.92 strike price, when Van Camp exercised those options the Company would receive $1.8 million instead of $1.1 million – *a cost to the Company of $700,000 million for this single instance of option backdating*.

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

70.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions. Given the many times Equinix's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

71.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Equinix, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

72.     The Counts alleged herein are timely. As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Equinix's public investors that Equinix's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates

1   other than those disclosed, and that strategically timed option grants were issued based on the

2   manipulation of insider information that ensured that the true fair market value of the Company's

3   stock was, in fact, higher than the publicly traded price on the date of the option grant.

4        73.    Equinix's public investors had no reason to know of the Defendants' breaches of their

5   fiduciary duties until the SEC's inquiry into Equinix's option practices was disclosed in June 2006.

6        74.    Finally, as fiduciaries of Equinix and its public shareholders, the Defendants cannot

7   rely on any limitations defense where they withheld from Equinix's public shareholders the facts that

8   give rise to the claims asserted herein, *i.e.*, that the Equinix Board had abdicated its fiduciary

9   responsibilities to oversee the Company's executive compensation practices, and that the option

10  grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to

11  maximize the costs for the Company.

12                                **COUNT I**

13                  **Violations of §14(a) of the Exchange Act Against**
                                  **All Defendants**
14

15       75.    Plaintiff incorporates by reference and realleges each and every allegation set forth

16  above, as though fully set forth herein.

17       76.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no

18  proxy statement shall contain "any statement which, at the time and in the light of the circumstances

19  under which it is made, is false or misleading with respect to any material fact, or which omits to

20  state any material fact necessary in order to make the statements therein not false or misleading." 17

21  C.F.R. §240.14a-9.

22       77.    The 2001-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

23  omitted material facts, including the fact that Defendants were causing that Equinix to engage in an

24  option backdating scheme, a fact which Defendants were aware of and participated in from at least

25  1995.

26       78.    In the exercise of reasonable care, Defendants should have known that the Proxy

27  Statements were materially false and misleading.

28

1  79.  The misrepresentations and omissions in the Proxy Statements were material to

2  plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the

3  accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as

4  revelations of the truth would have immediately thwarted a continuation of shareholders'

5  endorsement of the directors' positions, the executive officers' compensation and the Company's

6  compensation policies.

7  80.  The Company was damaged as a result of the material misrepresentations and

8  omissions in the Proxy Statements.

9  COUNT II

10  Accounting

11  81.  Plaintiff incorporates by reference and realleges each and every allegation set forth

12  above, as though fully set forth herein.

13  82.  At all relevant times, Defendants, as directors and/or officers of Equinix, owed the

14  Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

15  83.  In breach of their fiduciary duties owed to Equinix and its shareholders, the

16  Defendants caused Equinix, among other things, to grant backdated stock options to themselves

17  and/or certain other officers and directors of Equinix. By this wrongdoing, the Defendants breached

18  their fiduciary duties owed to Equinix and its shareholders.

19  84.  The Defendants possess complete and unfettered control over their improperly issued

20  stock option grants and the books and records of the Company concerning the details of such

21  improperly backdated stock option grants to the Defendants.

22  85.  As a result of Defendants' misconduct, Equinix has been substantially injured and

23  damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those

24  improperly granted options which have been exercised and sold.

25  86.  Plaintiff demands an accounting be made of all stock options grants made to

26  Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the

27  value of the grants, the recipients of the grants, the exercise date of stock options granted to the

28

1  Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other
2  exercise of backdated stock option grants received by the Defendants.

### COUNT III

**Breach of Fiduciary Duty and/or Aiding and Abetting**
**· Against All Defendants**

87.    Plaintiff incorporates by reference and realleges each and every allegation set forth
above, as though fully set forth herein.

88.    Defendants agreed to and did participate with Van Camp, Koen, Backaus and Ferris
and the other Defendants and/or aided and abetted one another in a deliberate course of action
designed to divert corporate assets in breach of the fiduciary duties the Defendants owed to the
Company.

89.    The Defendants have violated fiduciary duties of care, loyalty, candor and
independence owed to Equinix and its public shareholders, have engaged in unlawful self-dealing
and have acted to put their personal interests and/or their colleagues' interests ahead of the interests
of Equinix and its shareholders.

90.    As demonstrated by the allegations above, Defendants failed to exercise the care
required, and breached their duties of loyalty, good faith, candor and independence owed to Equinix
and its public shareholders, and they failed to disclose material information and/or made material
misrepresentations to shareholders regarding Defendants' option backdating scheme.

91.    By reason of the foregoing acts, practices and course of conduct, the Defendants have
failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward
Equinix and its public shareholders.

92.    As a proximate result of Defendants' conduct, in concert with Van Camp, Koen,
Backaus and Ferris, Equinix has been injured and is entitled to damages.

### COUNT IV

**Abuse of Control Against All Defendants**

93.    Plaintiff incorporates by reference and realleges each and every allegation set forth
above, as though fully set forth herein.

94.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Equinix, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Equinix. As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Equinix.

95.     Defendants' conduct constituted an abuse of their ability to control and influence Equinix.

96.     By reason of the foregoing, Equinix has been damaged.

### COUNT V

### Gross Mismanagement Against All Defendants

97.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

98.     Defendants had a duty to Equinix and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Equinix.

99.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Equinix in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Equinix's affairs and in the use and preservation of Equinix's assets.

100.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Equinix to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Equinix, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Equinix.

101.    By reason of the foregoing, Equinix has been damaged.

<div align="center">

**COUNT VI**

**Constructive Fraud Against All Defendants**

</div>

102.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

103.    As corporate fiduciaries, Defendants owed to Equinix and its shareholders a duty of candor and full accurate disclosure regarding the true state of Equinix's business and assets and their conduct with regard thereto.

104.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Equinix's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Equinix.  Thus they have committed constructive fraud and violated their duty of candor.

105.    By reason of the foregoing, Equinix has been damaged.

<div align="center">

**COUNT VII**

**Corporate Waste Against All Defendants**

</div>

106.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Equinix to waste valuable corporate assets.

108.    As a result of Defendants' corporate waste, they are liable to the Company.

<div align="center">

**COUNT VIII**

**Unjust Enrichment Against All Defendants**

</div>

109.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

110.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Equinix, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

111.    All the payments and benefits provided to the Defendants were at the expense of Equinix. The Company received no benefit from these payments. Equinix was damaged by such payments.

112.    Certain of the Defendants sold Equinix stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Equinix. A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT IX

### Against the Officer Defendants for Rescission

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

114.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Equinix entered into during the relevant period were obtained through Defendants'. fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Equinix shareholders and filed with the SEC.

115.    All contracts which provide for stock option grants between the Officer Defendants and Equinix and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

116.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.    At the time that the Insider Selling Defendants sold their Equinix common stock as set forth herein at ¶53, by reason of their high executive and/or directorial positions with Equinix,

1  the Insider Selling Defendants had access to highly material information regarding the Company,

2  including the information set forth herein regarding the true adverse facts of Equinix's improper

3  accounting.

4       118.   At the time of such sales, that information was not generally available to the public or

5  the securities markets. Had such information been generally available, it would have significantly

6  reduced the market price of Equinix shares at that time.

7       119.   The Insider Selling Defendants, and each of them, had actual knowledge of material,

8  adverse non-public information and thus sold their Equinix common stock in California in violation

9  of California Corporations Code §25402.

10       120.   Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants,

11  and each of them, are liable to Equinix for damages in an amount up to three times the difference

12  between the price at which Equinix common stock was sold by these Defendants, and each of them,

13  and the market value which that Equinix common stock would have had at the time of the sale if the

14  information known to these Defendants, and each of them, had been publicly disseminated prior to

15  that time and a reasonable time had elapsed for the market to absorb the information.

16  <div align="center">**COUNT XI**</div>

17  <div align="center">**Against the Insider Selling Defendants for Breach of Fiduciary**
18  **Duties for Insider Selling and Misappropriation of Information**</div>

19       121.   Plaintiff incorporates by reference and realleges each and every allegation set forth

20  above, as though fully set forth herein.

21       122.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the

22  information described above, and sold Equinix common stock on the basis of such information.

23       123.   The information described above was proprietary non-public information concerning

24  the Company's financial condition and future business prospects. It was a proprietary asset

25  belonging to the Company, which the Insider Selling Defendants used for their own benefit when

26  they sold Equinix common stock.

27       124.   At the time of their stock sales, the Insider Selling Defendants knew that the

28  Company's revenues were materially overstated. The Insider Selling Defendants' sales of Equinix

1   common stock while in possession and control of this material adverse non-public information was a

2   breach of their fiduciary duties of loyalty and good faith.

3       125.    Since the use of the Company's proprietary information for their own gain constitutes

4   a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

5   imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

6                                **PRAYER FOR RELIEF**

7       WHEREFORE, plaintiff demands judgment as follows:

8       A.     Awarding money damages against all Defendants, jointly and severally, for all losses

9   and damages suffered as a result of the acts and transactions complained of herein, together with pre-

10  judgment interest, to ensure Defendants do not participate therein or benefit thereby;

11      B.     Directing all Defendants to account for all damages caused by them and all profits

12  and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

13  including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

14  imposing a constructive trust thereon;

15      C.     Directing Equinix to take all necessary actions to reform and improve its corporate

16  governance and internal control procedures to comply with applicable law, including, but not limited

17  to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or

18  Articles of Incorporation and taking such other action as may be necessary to place before

19  shareholders for a vote adoption of the following Corporate Governance policies:

20          (i)     a proposal requiring that the office of CEO of Equinix and Chairman of the

21  Equinix Board of Directors be permanently held by separate individuals and that the Chairman of the

22  Equinix Board meets rigorous "independent" standards;

23          (ii)    a proposal to strengthen the Equinix Board's supervision of operations and

24  develop and implement procedures for greater shareholder input into the policies and guidelines of

25  the Board;

26          (iii)   appropriately test and then strengthen the internal audit and control functions;

27          (iv)    rotate independent auditing firms every five years;

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 32 -

1              (v)     control and limit insider stock selling and the terms and timing of stock option

2    grants; and

3              (vi)    reform executive compensation.

4        D.     Ordering the imposition of a constructive trust over Defendants' stock options and

5    any proceeds derived therefrom;

6        E.     Awarding punitive damages;

7        F.     Awarding costs and disbursements of this action, including reasonable attorneys',

8    accountants', and experts' fees; and

9        G.     Granting such other and further relief as this Court may deem just and proper.

10                                    **JURY DEMAND**

11       Plaintiff demands a trial by jury.

12   DATED: October 13, 2006                LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
13                                          WILLIAM S. LERACH
                                            DARREN J. ROBBINS
14                                          TRAVIS E. DOWNS III

15

16
                                                   TRAVIS E. DOWNS III
17
                                            655 West Broadway, Suite 1900
18                                          San Diego, CA 92101
                                            Telephone: 619/231-1058
19                                          619/231-7423 (fax)

20                                          LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
21                                          SHAWN A. WILLIAMS
                                            100 Pine Street, Suite 2600
22                                          San Francisco, CA 94111
                                            Telephone: 415/288-4545
23                                          415/288-4534 (fax)

24                                          **Attorneys for Plaintiff**

25   S:\CptDraft\Derivative\Cpt Equinix Derv.doc

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 33 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4

5
                                        _____
6                                       ATTORNEY OF RECORD FOR PLAINTIFF
                                        JOHN DROSKOKSKI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EQUINIX, INC. VERIFICATION

I, John A. Droskokski, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _9/5/06_                     _____
                                   SIGNATURE